# Adams, Appellant, *v.* Stage.

*Oil and gas leases—Draining land—Duty to sink wells.*

It is an implied condition of every lease of land for the production of oil therefrom that when the existence of oil in paying quantities is made apparent, the lessee shall put down so many wells as may be reasonably necessary to secure the oil for the common advantage of both lessor and lessee ; but he is not bound to put down more wells than are reasonably necessary to obtain the oil of his lessor, nor to put down wells that will not be able to produce oil sufficient to justify the expenditure.

Where a lessee drills one well on the leased premises, which yields from one to two and one half barrels per day, and he drills wells on various adjoining leaseholds which he owns, none of which, however, are good producing wells, and there is no evidence to show that he acted in bad faith in drilling these wells, or in failing to drill other wells on the lessor's premises, he is not liable to account to the lessor for royalties on oil produced from wells on the adjoining leaseholds.

Argued May 15, 1901.   Appeal, No. 154, April T., 1901, by plaintiff, from decree of C. P. Butler Co., Sept. T., 1899, No. 2, dismissing bill in equity in case of Sirisah Adams v. G. G. Stage.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Bill in equity for an account.

The facts appear by the opinion of the Superior Court.

The court in opinion by GREER, P. J., dismissed the bill.

*Error assigned*, among others, were decree dismissing the bill.

*H. H. Goucher* and *S. F. Bowser*, with them *A. L. Bowser*, for appellant.—The defendant was liable to account : Kleppner v. Lemon, 176 Pa. 502 ; Colgan v. Forest Oil Co., 194 Pa. 234.

There is an implied covenant in every lease reserving to the lessor a share of the product, that the lessee will operate the premises in such manner and to such reasonable extent as to secure to the lessor the share of the product reserved as a consideration of the grant : Ray v. Natural Gas Co., 138 Pa. 589 ; Kleppner v. Lemon, 176 Pa. 502 ; Aye v. Philadelphia Co., 193 Pa. 451 ; McKnight v. Manuf. Natural Gas Co., 146 Pa. 185.

All the facts and circumstances are to be taken into consider-

ation in determining whether a transaction is fraudulent or not: Reinhard v. Keenbartz, 6 Watts, 93; Max Meadows Land & Imp. Co. v. Mendinhall, 4 Pa. Superior Ct. 398; Montgomery Web Co. v. Dienelt, 133 Pa. 585; Kleppner v. Lemon, 176 Pa. 502; Sebring v. Brickley, 7 Pa. Superior Ct. 198; Jones v. Lewis, 148 Pa. 234; Kaine v. Weigley, 22 Pa. 183.

*T. C. Campbell*, with him *C. Walker*, for appellee.—The findings of fact of a judge sitting as a chancellor under the new equity rules, while not conclusive upon appeal, will not be disturbed except for error which clearly appears : Steinmeyer v. Siebert, 190 Pa. 471 ; Mackintyre v. Jones, 9 Pa. Superior Ct. 543 ; Bannon v. Lincoln Nat. Bank, 14 Pa. Superior Ct. 566.

It is not true that the measure of defendant's responsibility to drill under an implied contract is to be determined by the question whether an adjoining well will drain the territory. The element of profit also enters into it: McKnight v. Manuf. Nat. Gas Co., 146 Pa. 185.

The court had no jurisdiction : Allison's App., 77 Pa. 221 ; Masson's App., 70 Pa. 26 ; Reeder v. Trullinger, 151 Pa. 287 ; Maguire v. Heraty, 163 Pa. 381 ; Bank of Kentucky v. Schuylkill Bank, 1 Parsons, 219 ; Colgan v. Forest Oil Co., 194 Pa. 241.

A claim which in effect is merely for damages for breach of contract, cannot sustain a suit in equity for an accounting, and it is well settled that where the accounts are all on one side, and no discovery is sought, equity will not take jurisdiction : Paton v. Clark, 156 Pa. 49 ; Pittsburg & Connellsville R. R. Cos.' App., 99 Pa. 177 ; Grubb's App., 90 Pa. 228 ; Koch's App., 93 Pa. 434.

OPINION BY W. D. PORTER, J., July 25, 1901:

The plaintiff was and still is the owner of a tract of land containing seventeen acres almost a right-angled triangle in shape, the point at the intersection of the hypothenuse and base being cut off, thus forming the short easterly line of the tract; the south line of the tract corresponds to the base of the triangle and the west line to the perpendicular; the line from east to west is almost three times as long as that from north to south. The plaintiff executed a lease investing George Morris with the

exclusive right to operate for oil and gas upon this land, and the rights of Morris subsequently vested in this defendant. In 1896 the defendant drilled a well near the eastern end of the tract which proved a failure in the "100 feet sand" and was drilled down to the third sand where it proved a small producing well. At the time of the hearing in the court below this well was being pumped and was producing from one to two and a half barrels per day. The defendant held oil leases for adjoining tracts of land, vis: the Jos. Adams farm on the north, the Nancy Adams farm on the west and the Gilloway farm abutting upon the westerly half of the south line. The Forest Oil Company operated under a lease of the Robert Bartley farm which abutted upon the easterly half of the south line of the land of plaintiff. The defendant had carried on operations on all of these surrounding leases with varying success. The plaintiff filed this bill alleging the lease of her land, that the defendant had operated thereunder and obtained a producing well, that he had refused to further develop the property, and that he was by his operations upon the adjoining land draining the oil from her property and depriving her of the royalties which ought to accrue under the lease. She prayed for a decree that the defendant proceed to drill another well, and for an account of the oil produced and run by the defendant from wells drilled on adjoining leases nearby, and that she be allowed a royalty on all said oil, or paid in damages the value thereof, at the rate of one eighth royalty, as provided in said lease. The prayer for a decree that the defendant drill additional wells was abandoned in the court below and withdrawn in this court. The case turns upon the right of the plaintiff to an account. In the bill as originally filed there was no allegation of fraud, but an amendment was subsequently allowed containing that formal averment.

The lessee had done all the drilling required by the express terms of the lease. If there was any duty to proceed further in the development and exploration of the land it arose out of the results of the operation which had been completed and the development of the surrounding territory. "It is an implied condition of every lease of land for the production of oil therefrom that when the existence of oil in paying quantities is made apparent the lessee shall put down so many wells as may be reasonably necessary to secure the oil for the common advantage

of both lessor and lessee:" Kleppner v. Lemon, 176 Pa. 502. The principles of law controlling the rights of the parties under such circumstances were in the case cited declared to be : ·

"1. The lease contemplates the production of the oil under-lying the lot by means of operations conducted on its surface.

"2. The number and location of the wells necessary to carry out the purpose of the contract is a subject belonging primarily to the lessee.

"3. In disposing of this question, the lessee is bound to take into consideration the fact · that his lessor is the owner of the oil, and to arrange and conduct his efforts to bring it to the surface in such manner as will best protect the interest of both parties to the contract.

"4. He is not bound to put down more wells than are reason-ably necessary to obtain the oil of his lessor, nor to put down wells that will not be able to produce oil sufficient to justify the expenditure.

"5. But that the oil may be obtained in time through other wells, on the lands of other owners, is not enough to excuse the lessee from his implied undertaking to operate the land for the best interests of both owner and operator." In that case it was held that the surrounding developments showed with a reasonable degree of certainty that one half of the Kleppner lot was over a coarse porous rock and capable. of furnishing one or more good wells ; that the wells upon adjoining lands would, during the life of the lease, drain all the oil from the land of plaintiff and that the defendant was guilty of an actual fraud in refraining from drilling upon the lease for the purpose of obtaining the plaintiff's oil through the wells of the defend-ant on adjoining lands. The report of that case, as above cited, and when it again came before the Supreme Court in 197 Pa. 430, makes it very clear that the decision was based upon the facts in that particular case. In commenting upon Kleppner v. Lemon, Mr. Justice MITCHELL, who spoke for the court in Young v. Forest Oil Co., 194 Pa. 243, said : " That decision was not meant to stretch the jurisdiction of equity beyond its regular and established limits, nor to blaze out any new path for pro-ceedings on oil or gas leases differing from ordinary remedies between lessor and lessee. It rested on fraud, alleged and proved, and fraud in fact not merely inferred from a difference

in judgment between the defendant and the court as to the proper development of the leased premises." In the present case the advisability of drilling additional wells upon the land of plaintiff was a question involving business judgment and management, the lessee was not bound to work unprofitably to himself for the profit of the lessor, and the question of further exploration was primarily to be determined by him who would have to foot the bill. If the judgment of the defendant was exercised in good faith, and involved no manifestly fraudulent use of opportunities, we cannot say that he failed to discharge any duty to the plaintiff arising out of his contract and the operations thereunder. If there was no failure in duty there is no obligation to account: Colgan v. Forest Oil Co., 194 Pa. 234. The learned judge of the court below refused to find that the defendant had obtained good producing wells on the Nancy Adams farm to the west and the Jos. Adams farm on the north of plaintiff's land. He did find that producing wells had been obtained on said lands, but added: "I am unable to say from the evidence that they were 'good' producing wells." The evidence would have justified a finding that no well on the Jos. Adams farm would pay for the cost of drilling and putting it in operation; and the same may be said of the well No. 5 on the Nancy Adams farm, which was nearest to and west of defendant's land. The character of the well on plaintiff's land and of wells No. 2 and No. 3 on the Bartley farm, and very near plaintiff's south line, was such as might cause a man of business judgment to hesitate before entering upon further operations in that vicinity. It is true that the defendant had obtained a well on the Gilloway farm some distance south of the almost extreme westerly end of plaintiff's land, and a well on the Nancy Adams farm about 400 feet southwest of the corner of plaintiff's land, each of which had for a time at first produced oil in paying quantities, but what they were producing at the time of the hearing does not satisfactorily appear. The learned judge found that the evidence did not show that the defendant in his operation of the lease was not acting in good faith on his business judgment. He expressly refused to find that the defendant was fraudulently evading his obligations to the plaintiff and draining the oil from her land through wells on his adjoining leases. These are the points in which the

burden was upon the plaintiff to satisfy the conscience of the court. A careful consideration of the evidence has failed to convince us that there was error in the findings of the learned judge. The testimony certainly rendered it very doubtful whether any land in that vicinity north of the south line of plaintiff's tract was indicated by the developments as reasonably certain to render a drilling operation profitable. The determination of the defendant not to drill may have been arrived at in good faith. The evidence is clearly not of such a character as to warrant us in reversing the court below. We are not convinced that the defendant has or ever will through his outside wells drain oil from plaintiff's land.

The decree is affirmed and the appeal dismissed at costs of the appellant.