# Hurley *v.* Ashbridge, Appellant.

*Assignment—Equitable assignment—Executory contract—Lien on future fund.*

1. Every express executory agreement in writing whereby the contracting party sufficiently indicates an intention to make some particular property or fund therein described or identified a security for a debt or other obligation, or whereby the party promises to convey or assign, or transfer the property as security, creates an equitable lien upon the property so indicated which is enforceable against the property. This rule applies to a fund to be created in the future, and to an agreement which does not contain the usual words of a formal assignment or transfer in præsenti.

2. Where money has been loaned for use in making alterations and improvements to real estate, and notes have been given therefor, and subsequently the creditor agrees to extend the notes in consideration of a written agreement on the part of the debtor that upon the sale of the real estate all of the notes shall become immediately due and be paid out of the proceeds of the sale, the agreement is an equitable assignment of so much of the proceeds of the sale as will be necessary to pay the notes, and the creditor will have a lien upon the fund to enforce the payment.

Argued Oct. 7, 1913. Appeal, No. 187, Oct. T., 1912, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1911, No. 4,497, for plaintiff on case stated in suit of Patrick J. Hurley v. A. S. Ashbridge, Jr. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Case stated to determine whether Patrick J. Hurley was entitled to receive payment in preference to general creditors the amount of certain promissory notes out of the proceeds of the sale of certain real estate belong-

ing to Robert G. Caldwell. The case turned upon the following agreement in writing:

"Whereas, Robert G. Caldwell executed and delivered to P. J. Hurley his four promissory notes, all dated October 1, 1909, as follows:

" One for $300 payable nine months after date.

" One for $300 payable one year after date.

" One for $300 payable fifteen months after date.

" One for $220.93 payable eighteen months after date, each of said notes bearing interest from date.

" Said notes having been given for labor and material furnished by P. J. Hurley in fitting up a saloon for Robert G. Caldwell at 1118 South Broad street, Philadelphia.

" And whereas, the first note for $300 is overdue and Robert G. Caldwell is unable to pay the same.

" Now it is agreed as follows:

" 1. Robert G. Caldwell will pay to P. J. Hurley cotemporaneously with the execution of this agreement on account of said due note the sum of Fifty dollars, together with the interest due on said note to date.

" 2. P. J. Hurley will extend the time for the payment of the balance due on said note until August 1, 1910, said balance to continue to bear interest until paid.

" 3. Robert G. Caldwell agrees that in case he shall at any time sell or transfer his business or lease or fixtures at 1118 South Broad street, all of said four notes, or the entire balance thereof remaining unpaid shall at once become due and payable as if said notes had been made payable on demand.

" 4. Robert G. Caldwell agrees that in case he shall at any time sell or transfer his said business or lease or fixtures at 1118 South Broad street, he will pay the entire amount of said notes or any unpaid balance thereof out of the first proceeds of such sale and will immediately upon such sale give such order to P. J. Hurley on the purchaser as will secure such payment."

The court entered judgment for plaintiff on case stated.

*Error assigned* was in entering judgment for plaintiff on case stated.

*J. Louis Breitinger*, for appellant.—There was no pledge: Collins's App., 107 Pa. 590; Christmas v. Russell, 81 U. S. 69; Wylie's App., 92 Pa. 196.

*Ralph B. Evans*, with him *Frank P. Prichard*, for appellee, cited: Nesmith v. Drum, 8 W. & S. 9; Patten v. Wilson, 34 Pa. 299; Wallace's App., 104 Pa. 559; Wylie's App., 92 Pa. 196; Ingersoll v. Coram, 211 U. S. 335 (29 Sup. Ct. Repr. 92); Peugh v. Porter, 112 U. S. 737 (5 Sup. Ct. Repr. 361); Union Trust Co., v. Bulkeley, 150 Fed. Repr. 510; Atchison, etc., Ry. v. Hurley, 153 Fed. Repr. 503.

OPINION BY HEAD, J., February 20, 1914:

The plaintiff's right to the judgment he obtained rests on his claim that he had an equitable assignment of or an equitable lien upon the fund for distribution. If he had such assignment or lien, it must have been created by the agreement in writing entered into by him and Caldwell, the owner of the property, the sale of which produced the fund. Before attempting to interpret the language of that instrument, a chancellor would naturally have before him the circumstances under which the agreement was made and the existing conditions at the time. Hurley was a creditor of Caldwell. This indebtedness represented labor done and material furnished by Hurley in the alteration and improvement of the identical property of Caldwell which afterwards produced the fund for distribution. The amount of the indebtedness had been previously ascertained and agreed on and was evidenced by four promissory notes, one of which was past due and another shortly thereafter to fall due. Caldwell, lacking the ready money to pay, was desirous of obtaining an extension of the due time of his notes to the end that he might negotiate

a sale of his property, consisting of a licensed saloon and its fixtures, more advantageous than could likely be made by a judicial sale following an adverse judgment and execution.. There is no room for doubt therefore as to the object and purpose of the agreement so far as Caldwell is concerned. What advantage for Hurley did the agreement contemplate? Not a promise to pay, for that he already had in writing. Not the liquidation of a disputed account, for his promissory notes had already disposed of that question. Unless then he was to get some kind of security for the payment of his indebtedness, no reason appears for the making of the written agreement between him and Caldwell.

Let us turn then to the language of that agreement. In its third paragraph, it provides that in case of the sale or transfer of his business, with the lease, fixtures, etc., all of the four promissory notes, the due time of which had been previously extended, were at once to become due as if they had been made payable on demand. Section 4 followed, and we quote it: "Robert G. Caldwell agrees that in case he shall at any time sell or transfer his said business, or lease or fixtures, at 1118 South Broad Street, he will pay the entire amount of said notes, or any unpaid balance thereof, out of the first proceeds of such sale and will immediately upon such sale give such order to Hurley on the purchaser as will secure such payment." Did the parties by that language contemplate a pledge pro tanto of the fund that would arise from the sale to secure the payment of the notes to Hurley?

We are not concerned with many of the questions that have arisen in defining and applying to particular cases the doctrine of equitable assignment or lien. It is clear the plaintiff gave a good and valuable consideration for what he was to obtain. All of the cases have practically held that no legal obstacle to the creation of such assignment or lien arises from the fact that the

fund to be affected thereby was not then in existence.
It is manifest that the plaintiff, as was said in Collins'
App:, 107 Pa. 590, has a strong equity because his
debt stands for labor and material furnished by him
in the improvement of the very property which produced
the fund.  It is agreed too that no particular form of
words is required to create a pledge of a future fund
or a lien thereon such as equity will recognize and en-
force.  It is sufficient if it plainly appear that the parties
intended to pledge the fund and appropriate it to a
particular purpose and have entered into some instru-
ment calculated to evidence and execute that intention.
The principle is thus broadly stated by Mr. Pomeroy
in his book on Equity Jurisprudence, vol. 3, par. 1235:
"The doctrine may be stated in its most general form
that every express executory agreement in writing
whereby the contracting party sufficiently indicates an
intention to make some particular property, or fund
therein described or identified, a security for a debt
or other obligation, or whereby the party promises to
convey, or assign, or transfer the property as security,
creates an equitable lien upon the property so indicated
which is enforceable against the property, &c."  Now
we have, in the construction of the paper before us,
a creditor with a valid subsisting indebtedness evidenced
by promissory notes.  We have a desire on the part of
the debtor to purchase an extension of time.  We have
a situation involving in no way any design or attempt
by the parties to hinder, delay, or defraud existing cred-
itors of the debtor.  We have a future fund in the im-
mediate contemplation of the parties clearly identified
in their written agreement.  We have a stipulation
signed by the debtor that such fund shall be applied
in the first instance to the payment of the creditors'
notes, and we have an obligation or promise by him
that he will thereafter execute such further order as may
be necessary to secure the payment already provided
for.  It appears to us this situation fairly answers every

requirement laid down by the authority quoted for the application of the doctrine.

It is true the agreement contains none of the usual words of a formal assignment or transfer in præsenti. The very fact there was then nothing in esse to assign should sufficiently account for the absence of such words. From the same learned author, vol. 3, par. 235, we quote: "Liens arise from executory agreements which do not convey or transfer any legal estate in the property but which stipulate that the property shall be security, or which pledge it for the performance of an obligation." So in Day and Sharpe's Est., 21 Sup. Ct. Rep. 118, it was said: "An equitable assignment is an agreement in the nature of a declaration of trust which a chancellor never hesitates to execute when it has been made on a valuable, or even good, consideration (cases cited). The matter of form is unimportant: East Lewisburg Lumber & Mfg. Co. v. Marsh, 91 Pa. 96. The case last cited is authority for the statement that equity will support assignments of contingent interests and expectancies; things which have no present actual existence, but rest in mere possibility, provided the agreements are fairly entered into and it would not be against public policy to uphold them."

The opinion filed by the learned judge below cites other authorities that we think fully sustain the proposition that the rival claimants to the fund, the appellants, had no such standing as to give them priority over the appellee, provided the latter has shown that as between him and his debtor he had such a pledge or appropriation of the proceeds of the future sale as equity would recognize and enforce. Nor do we think it can be successfully argued that our conclusion carries the doctrine of equitable lien or assignment beyond the boundaries heretofore established. Patten v. Wilson, 34 Pa. 299, is one of our earliest cases on the subject. It has been not infrequently cited in later cases, and we have not been able to discover any intention on the

part of the Supreme Court to limit its authority. It is practically on all fours with the case at bar. In the opinion delivered by Mr. Justice WOODWARD it is clearly pointed out that the conclusion reached in nowise rested on the fact that the relation between the parties was that of attorney and client: "Mr. Geyer had no lien on the fund attached, by virtue of the professional relation betwixt him and his client, but we think that, under the facts disclosed in his testimony, he had an equitable assignment. He wanted more than $100 for his services, but Wolf would agree to give no more, but that sum he agreed to give 'out of the verdict,' if Geyer would try his cause. Geyer did try the cause, and as between himself and Wolf, he acquired thus an equitable right to receive the $100; Wolf would be estopped from demanding it in face of his agreement." As we understand this language it requires nothing more than a necessary change in the names to make it cover the case at bar.

For the reasons we have indicated, in addition to those so well stated in the opinion of the learned judge below, we feel obliged to concur in the conclusion he reached. The assignments of error are overruled.

Judgment affirmed.