## In re Bankers Trust Company

*Ira Jewell Williams,* for exceptants.

*Thomas M. Thistle* and *J. Hibbs Buckman,* contra.

FINLETTER, P. J., February 14, 1934.—In July 1930, Bank of Philadelphia and Trust Company was financially embarrassed, and was told by the Secretary of Banking that it must try to merge with some other bank. Accordingly, it entered into an agreement with Bankers Trust Company of Philadelphia.

The agreement provided:

(*a*) That the trust company should lend to the bank, upon the bank's collateral demand note, a sum equivalent to the bank's deposit liability plus accrued interest thereon, plus an amount equal to the bank's loans payable, and that the trust company should pay those liabilities (article IV);

(*b*) That as collateral for the loan the bank should and did transfer all its business and assets to the trust company (article V);

(*c*) That the trust company should open a "Liquidation Loan Account" (article VI), against which were to be debited, inter alia (article XIV), "all expenses of appraisal, of counsel fees and all costs in connection with the transfer of assets . . . and in the transfer, collection and liquidation of assets";

(*d*) That the bank's assets should be liquidated (article VIII); and

(*e*) That any surplus of assets over the amount due upon the loan account after liquidation should be completed should be distributed to the bank's stockholders (article IX).

The present claimants represented the bank in the negotiations leading up to the agreement. Their services in this connection included general advice, attendance at numerous conferences, assistance in adjusting the many questions which arose in the course of consummating the agreement, and assistance in drawing the agreement itself.

After the agreement was made, a liquidation committee, formed pursuant to the agreement, retained the claimants as its attorneys; and claimants handled all legal matters placed in their hands by that committee, until December 22, 1930, when the Secretary of Banking took possession of the trust company's

business and assets. The services were fairly worth $21,250, as the auditing judge found. The services rendered after the agreement was consummated were of course directly beneficial to the fund, in preserving and liquidating the assets therein segregated.

The account before the court is of the trust assets so segregated and accounted for.

The auditing judge allowed the claim in full and divided it into two parts: (a) A fund for services rendered in respect of the consummation of the agreement, $6,250; and (b) an amount for services rendered to the segregated fund, $15,000. The court denied the claim for a priority. To his failure to allow the priority, exceptions were duly filed.

Since the agreement contemplated the segregation and accounting for the assets and the payment thereout of counsel fees and expenses, the exceptants urge (and we think they are right) that they are entitled to priority of payment out of such assets as a trust fund, for services in creating and preserving such trust fund.

The bank divested itself of all its assets and arranged for the payment of services currently rendered in respect of the transfer thereof by relegating to the trust res thus created the claim for payment of such services. The trust company may not object to the payment out of the trust fund, since the trust company took the trust fund cum onere. The trust company may not accept the benefit of services rendered to the res without paying thereout for such services.

Article XIV, sec. 1, of the merger agreement provides:

"All expenses of appraisal, of counsel fees and all costs in connection with the transfer of the assets herein provided for, and in the transfer, collection, and liquidation of assets, shall be debited against the loan account."

Both of the parties intended that the expenses should be first paid out of the fund. Neither party had any rights except subject to the payment of the expenses out of the fund. The bank retained nothing wherewith to pay; the trust company's agreement to pay the expenses was not a general agreement but a special agreement charging the fund. The provision to "debit" the special account is tantamount to an order or authority to pay out of the fund.

That the effect of the merger agreement was to create a trust of the assets of the bank transferred to the trust company is clear.

And this was in fact carried out. The physical assets of the bank were always kept entirely separate and apart; and, in the accounting, the particular assets transferred by the bank to the trust company are segregated. The assets against which this claim is made were considered and treated as an entirely segregated and earmarked trust estate being administered for a particular purpose by virtue of the terms of the agreement.

The present claim is for services rendered in connection with the creation and administration of the trust. Hence the fees for these services are costs and expenses of administering the trust, and as such are payable out of the trust estate as preferred claims: 5 C. J. 1277, sec. 460 (4).

Claimants have an equitable lien for their fees for services rendered in the creation and preservation of the fund. While at the common law there could be no lien without actual possession, this is not true of equitable liens, to which possession is unnecessary: Hurley v. Ashbridge, 55 Pa. Superior Ct. 523 (1914); Patten v. Wilson, 34 Pa. 299 (1859); Cramer v. Equitable Gas Co., 14 D. & C. 153 (1929); Commonwealth ex rel. v. Central Trust Company of Pittsburgh, 67 Pitts. 158 (1919); Ingersoll v. Coram, 211 U. S. 335 (1908); McCormack v. Harrah et al., 51 F. (2d) 316 (1931); Barnes v. Alexander, 232

U. S. 117 (1914); Williamson v. Missouri-Kansas Pipe Line Co. et al., 56 F. (2d) 503 (1932); Terney v. Wilson, 45 N. J. L. 282 (1883); Cooke, Trustee, v. Thresher et al., 51 Conn. 105 (1883).

Irrespective of the agreement, counsel are entitled to priority out of the fund. It is said in 6 C. J. 782, sec. 394 (2), that "while there is, strictly speaking, no lien on any fund which is within the custody or control of the court; yet, where a fund is brought into a court of equity through the services of an attorney who looks to that alone for his compensation, he is regarded as the equitable owner of the fund to the extent of the reasonable value of his services, and the court in administering the fund will intervene for his protection and award him a reasonable compensation to be paid out of it": Quakertown & Eastern R. R. Co. v. Guarantors' Liability Indemnity Co. of Phila., 206 Pa. 350 (1903); Spencer's Appeal, 6 Sadler 488 (1887); McKelvey's and Sterrett's Appeals, 108 Pa. 615 (1885); Belcher's Estate, 13 Dist. R. 327 (1904); Crawford's Estate, 307 Pa. 102, 110 (1931); Kennedy's Estate, 141 Pa. 479 (1891); Weed's Estate (McGinnis' Appeal), 163 Pa. 595 (1894); Weed's Estate (First National Bank of Oswego's Appeal), 163 Pa. 600 (1894).

In the instant case, the fund arising from the pledged assets of Philadelphia Bank and Trust Company were created and protected by the services of counsel, and this fund, being within the grasp of the court, should be available to counsel before other creditors are paid.

The assets of the bank, transferred to the trust company pursuant to the merger agreement, were by virtue of that agreement impressed with an equitable lien in the nature of a trust for the payment of the costs and expenses, including counsel fees, of the merger, and the liquidation of the bank's assets.

Claimants have a valid equitable lien or equitable assignment. Their rights follow the fund into the hands of the Secretary of Banking who, like an ordinary receiver in equity, takes the fund cum onere.

It is argued that the claimants have no lien upon the fund because they have in their possession no papers vital to their client's rights, to which the lien may attach. Their right to a lien has a firmer basis than the mere possession of documents. It is based on the possession by the client of a fund created by the claimants' efforts and expressly charged with counsel fees.

Claimants' lien of course is limited to the fund received by the trust company from the bank.

We have therefore come to the following

### Conclusions of law

1. The mere pledging of the entire assets created a fiduciary relationship and a trust res.

2. The agreement of pledge recognized the priority rights of those rendering services in respect of pledged assets and gave an equitable lien therefor which was in the nature of a trust.

3. The effect of the action of the parties, aside from the express provisions as to the payment of counsel fees, was to create a trust fund which on equitable principles must bear the expenses of its creation and preservation before there is anything to distribute to the beneficiaries.

4. Claimants have a valid equitable lien upon or an equitable assignment pro tanto of the funds by virtue of the express agreement by all parties that expenses and counsel fees should be paid out of the transferred fund.

5. Claimants' rights follow the fund into the hands of the Secretary of Banking who, like an ordinary receiver in equity, takes the fund cum onere.

6. The agreement to "debit" the account (i. e., to pay thereout) is available for the protection of counsel who have acted on the faith thereof.

7. The transfer of the fund was made in trust, inter alia, to pay attorneys' fees necessary to the creation and realization of the fund.

8. Said transfer of the fund having been made in trust, inter alia, to pay attorneys' fees necessary to the creation and realization of the fund, the trust is enforceable against the fund now in the hands of the Secretary of Banking.

9. Exceptants are entitled to a priority out of the fund.

### Order

The first, second, and third exceptions are sustained, and it is ordered that the claimants be paid the amount of their claim in preference and priority to depositors and general creditors of Bank of Philadelphia and Trust Company, out of the funds of that bank in the hands of the accountant.