## Grossman's Estate

*George V. Strong* and *Isaac S. Grossman,* for account-ants.

*Israel Packel,* for exceptants.

STEARNE, J., December 6, 1940.—Decedent, owner of a business property, encumbered with four mortgages aggregating $50,000, leased it to a corporation for a term of 10 years. The lease was dated one year before the death of decedent. Under its terms lessor (decedent) agreed that all sums of money paid by the lessee on account of the above mortgages were "charged against the demised premises". The lessee paid off the mortgages. The payments were made during the lifetime and after the death of decedent. Over six years after the death the trustees created new mortgages and repaid the lessees most of the foregoing indebtedness. Certain of the trust beneficiaries now contend that because the lessee had not brought suit against the decedent's estate, and indexed the suits under section 15 of the Fiduciaries Act of June 7, 1917, P. L. 447, the lien of debts was lost, and that the real estate was thereby freed from such indebtedness; that the trustees, therefore, improvidently created the mortgages and paid the proceeds to the lessee on account of its claim, and that the trustees should be surcharged therefor.

The auditing judge properly declined so to surcharge. The lease specifically provided that such payments by the lessee should be a charge against the real estate, and therefore section 15 of the Fiduciaries Act, supra, has no application.

Decedent agreed, in the lease, that all payments made by the lessee on account of the mortgages were "charged against [the real estate]". He thereby, in his lifetime, created a valid equitable lien upon the premises, which equity will enforce. The essence of such a lien is the ex-

pression of intention to make this particular real estate security for the debt. And such rule applies to past and future indebtedness when so indicated in the agreement. See Hurley v. Ashbridge, 55 Pa. Superior Ct. 523, cited with approval in First National Bank of Bangor v. Bangor Trust Co., 297 Pa. 115, 121, and Sundheim v. Philadelphia School Dist. et al., 311 Pa. 90. In the latter case Mr. Justice Kephart wrote (p. 103) :

"We have no doubt that an express executory contract in writing whereby the contracting parties sufficiently indicate an intention to make some *particular property or fund therein described* the security for a debt or other obligation, creates an equitable lien on the property so indicated (Hurley v. Ashbridge, 55 Pa. Superior Ct. 523) . . .".

This situation is quite different from that in Green v. Green, 255 Pa. 224 (relied upon by exceptant), because in that case it was merely a provision to pay a stipulated amount out of the proceeds of a sale of real estate, if and when a sale should be made (see page 231). There was no creation of a claim upon the real estate itself. Certainly, section 15 of the Fiduciaries Act has no application where decedent in his lifetime created the charge upon his own real estate. No statutory requirement exists to establish a lien already created. Furthermore, testator's beneficiaries, who possess the status of volunteers, take through decedent, and are bound by testator's own agreement.

Three of the encumbrances were building and loan mortgages. The lessee, in accordance with the lease, paid the building and loan association dues monthly. At fixed periods these shares matured, or had added to the amounts paid in an enhancement due to earnings. When the mortgages were paid off by the lessee, credit was given for the value of the matured stock, and the book value of those shares which had not matured. In the account the lessee is given credit for the actual cash payments as well as for the earnings or profits upon the stock. Exceptants

maintain that, under these circumstances, the lessee should receive credit only for the amount of actual payments on the stock, and that the enhancement or profit on the shares passes to decedent's estate.

The words of the lease are as follows:

". . . it is further understood and agreed that the sums which have been paid by the said lessee during their said tenancy in reduction of the principal of any of the mortgages shall enure to the benefit and shall be the property of the said lessee. . . ."

It is maintained by exceptant that the words "the sums which have been paid" limit the credit to the amounts actually paid by lessee and preclude the lessee from the additional credit for the earnings. This appears too narrow an interpretation. Decedent created the mortgages and pledged his stock therefor. Unless the payments were made by someone, the shares never could mature and be applied to the payment of the mortgages. It was the lessee's money which went for this purpose. It would be most inequitable to permit decedent's estate to have the mortgages satisfied, and to receive, in addition thereto, the profits or payments which the estate never made. It seems apparent that, if the lessee elected to pay off the mortgages by way of the customary building and loan method, it should be entitled to all the benefits, and must assume all the liability, that such plan entails. We approve the ruling of the auditing judge that the lessee was entitled to this credit.

The auditing judge allowed fees out of the fund to counsel for certain exceptants. The general rule is that each litigant must pay his own counsel, which expense, ordinarily, is not to be borne by the fund. In exceptional cases, however, a deviation from the general rule is permitted. We are not prepared to overrule the decision of the auditing judge that the circumstances surrounding this case were unusual; that the services rendered in securing an accounting and audit benefited all interested parties, and were not exclusively in such exceptants' in-

terest; and that such services were of assistance to the court in the audit of the account. Our decision, however, rests upon the peculiar facts and circumstances surrounding this case, and is not to be regarded as a precedent to vary the general rule as above stated.

For the reasons given, and under the authorities cited in the adjudication, to which we cannot profitably add, all exceptions are dismissed and the adjudication is confirmed absolutely.