**Harry Faber WHITE**

v.

**NEW YORK STATE NATURAL GAS CORPORATION.**

**Civ. A. No. 16680.**

United States District Court
W. D. Pennsylvania.

Dec. 30, 1958.

See, also, 190 F.Supp. 342.

Eckels, Stegner & Blystone, Meadville, Pa., for plaintiff.

Eckert, Seamans & Cherin, Pittsburgh, Pa., for defendant

SORG, District Judge.

On November 2, 1935, Harry Faber White, plaintiff, and C. E. Updegraff entered into a written contract wherein the said Updegraff retained the plaintiff as attorney to represent him before the Federal Trade Commission and other federal agencies, as well as in negotiations with gas concerns for the sale of gas from wells controlled by the said C. E. Updegraff. Under the terms of the contract, Updegraff agreed to pay the sum of $50,000 for plaintiff's services "contingent upon said Updegraff selling said natural gas from his well in said pool to the major concerns, any or all of them as said Updegraff may decide upon, it being understood that when it comes to the final say on whether or not a contract for sale shall be entered into that said Updegraff has the full and exclusive say in said matter."

The contract provided that White should receive 10 percent of the sales of gas each month until the sum of $50,000 shall have been paid in full. It also described gas wells "from which production shall be obligated for the payment of said sum of $50,000.00" and provided further as follows: "It is understood and agreed that this contract shall bind the heirs and assigns of all parties and that all parties in interest who may own any of the gas of which this is the subject matter shall be fully bound as set forth in this agreement as made by Updegraff for himself and all others and with the said White."

This contract was duly recorded in the office of the Recorder of Deeds of Potter County, Pennsylvania, in which County the leaseholds and wells were located, on April 6, 1936, in Miscellaneous Book A–3, page 124.

On June 1, 1940, C. E. Updegraff entered into an agreement to sell and deliver all of the gas produced from certain of the wells covered by the above mentioned contract to North Penn Gas Company, a corporation having its principal office in the Borough of Port Allegany, McKean County, Pa. Subsequently, C. E. Updegraff died and his son, Charles H. Updegraff succeeded to his interests in the leaseholds and gas wells covered by the contract. Charles H. Updegraff then sold, transferred and conveyed the said leaseholds and gas wells to the defendant, New York Natural Gas Corporation, incorporated under the laws of the State of New York.

North Penn Gas Company paid to the plaintiff various sums representing 10 percent of the proceeds of the sale of gas from said gas wells up to the date of the filing of the complaint in this action, amounting to the total sum of $23,-765.48.

Plaintiff alleges that on or about February 1, 1956, the New York Natural Gas Corporation restricted and cut back the production of the said gas wells to the extent that the payments to the plaintiff were substantially reduced and that from December, 1955, when plaintiff received

a monthly payment in the sum of $687.09, the monthly payments to the plaintiff by reason of the reduction in the amount of gas produced from the wells covered by the contract with C. E. Updegraff, were reduced to approximately $14.96.

On April 25, 1957, plaintiff filed his complaint against New York State Natural Gas Corporation, North Penn Gas Company and Charles H. Updegraff, praying for an accounting of monies of which plaintiff has been deprived by reason of the cut back in gas production, that the defendants be restrained from continuing to restrict the gas production of the wells and that a mandatory injunction be issued requiring the New York State Natural Gas Corporation to produce and the defendant North Penn Gas Company to receive and pay the defendant for his share of the full potential production of the said wells.

On May 17, 1957, the defendant New York State Natural Gas Corporation moved to dismiss for lack of jurisdiction on the grounds that there is no diversity of citizenship between the plaintiff and two of the defendants, North Penn Gas Company and Charles H. Updegraff. Plaintiff filed his motion to amend and drop from the record as parties defendant the North Penn Gas Company and Charles H. Updegraff.

On December 12, 1957, this Court entered an order granting the plaintiff's motion to amend the complaint.

Defendant New York State Natural Gas Corporation filed its answer on January 24, 1958, and on June 6, 1958, it filed its motion for summary judgment in accordance with the provisions of 56(b) and (c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the ground that the pleadings on file show that the defendant is entitled to judgment as a matter of law. In support of its motion, defendant New York State Natural Gas Corporation contends that the plaintiff's rights under the contract in question are either limited to the personal covenant of Updegraff or that at most, they constitute an equitable lien on the proceeds of sale of gas actually produced and that,

therefore, he has no claim unless and until a fund does arise from the production and sale of gas.

It is not disputed that New York State Natural Gas Corporation acquired its interest with notice of the contract between plaintiff and Updegraff, as well as the contract of sale between Updegraff and North Penn Gas Company, and that, therefore, its interest is held subject to plaintiff's rights under the contract.

Pomeroy's Equity Jurisprudence states the following in connection with equitable assignments and equitable liens in Volume 2 at Section 373:

"The operation of the grand principle that equity regards that as done which in good conscience ought to be done is perhaps less immediate and evident in producing these species of equitable property, or interest, but is no less real and certain. In all these instances an equity exists between the two parties, growing either out of an assignment which at law creates or transfers no *property* right, either present or future, in the subject-matter, or out of an executory contract which at law only creates a personal demand,—a mere right of action,—and equity, laying hold of the obligation thus assumed by or imposed upon one of the parties, transforms it, so to speak, upon the happening of the contingent event contemplated, into the real, beneficial, equitable ownership, property, or interest, of whatever nature and extent, absolute or qualified, it may be, according to the terms of the instrument."

In regard to equitable liens, Pomeroy states the following at Section 1235 of Volume 4:

"The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for

a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice. * * * but the doctrine itself is clearly an application of the maxim, equity regards as done that which ought to be done.

"*Identification and appropriation of property.*—In order, however, that a lien may arise in pursuance of this doctrine, the agreement must deal with some particular property, either by identifying it, or by so describing it that it can be identified, and must indicate with sufficient clearness an intent that the property so described, or rendered capable of identification, is to be held, given, or transferred as security for the obligation."

and at Section 1237:

"The form or particular nature of the agreement which shall create a lien is not very material, for equity looks at the final intent and purpose rather than at the form; and if the intent appear to give, or to charge, or to pledge property, real or personal, as a security for an obligation, and the property is so described that the principle things intended to be given or charged can be sufficiently identified, the lien follows."

These principles have been recognized in the cases of Sundheim v. Philadelphia School District, 1933, 311 Pa. 90, 166 A. 365 and Hurley v. Ashbridge, 1914, 55 Pa.Super. 523.

■ In accordance with these principles, the Court is of the opinion that, by the terms of the contract with C. E. Updegraff, plaintiff acquired an equitable interest in the gas which the wells covered by the agreement were capable of producing, contingent only upon Updegraff selling the gas to one of the "major gas concerns" as provided by the contract. This contingency was satisfied when C. E. Updegraff entered into an agreement with North Penn Gas Company for the sale of the gas.

■ Plaintiff's interest in the gas has been recognized over a period of many years by all parties concerned. His interest continued and was recognized by C. E. Updegraff following the contract for the production and sale of the gas between North Penn and Updegraff. His interest continued and was recognized by Charles H. Updegraff following the death of his father, C. E. Updegraff. His interest continued and was recognized by defendant, New York State Natural Gas Corporation, following the conveyance of the wells to it by Charles H. Updegraff. It is significant that plaintiff has been paid in excess of $23,000 over many years in conformity with the terms of the contract with Updegraff and in recognition of the interest he received thereby.

Plaintiff alleges in his complaint that his interest in the gas has been adversely affected by actions of the defendant. Whether he has been injured and the extent of his injury, if any, present material issues of fact which cannot be determined from the present state of the record. Depending upon the facts presented at the trial, the principles set forth in Young v. Forest Oil Company, 1899, 194 Pa. 243, 45 A. 121, Colgan v. Forest Oil Company, 1899, 194 Pa. 234, 45 A. 119, and Adams v. Stage, 1901, 18 Pa.Super. 308 may provide a proper basis for equitable relief to the plaintiff.

Defendant's motion for summary judgment will be denied.