## Eisenberg v. Eisenstein

*Nathan L. Posner, Isadore A. Shrager* and *E. Gerald Donnelly, Jr.* of *Fox Rothschild, O'Brien* and *Frankel,* for plaintiffs.

*Ira P. Tiger* of *Schnader, Harrison, Segal & Lewis, Gordon W. Gabell* of *Saul, Ewing, Remick & Saul,* for defendants.

RIBNER, J., July 18, 1972.—Plaintiffs have applied for a preliminary injunction enjoining the use of the proceeds of a United States Treasury check in the amount of $57,962.75 payable to defendants, Aaron and Melba Eisenstein, and deposited with defendant, The First Pennsylvania Banking and Trust Company.

A temporary injunction was issued without hearing by Hirsh, J., on May 31, 1972, and a preliminary injunction was ordered by this court on June 5, 1972, after hearing.

At the hearing, the following was established: Plaintiffs are Warren Eisenberg, Robert Grossman, Marvin Rosenbaum and Herbert Weinstein. The four are partners of Haskins and Sells, Certified Public Accountants, with offices located at 1200 Land Title Building, Philadelphia, Pa. Formerly, the four were partners trading as Eisenberg and Company, with offices located at 200 Tower Lane, Narberth, Pa. Sometime during 1967, defendants, Aaron and Melba Eisenstein, through their attorney, Benjamin Levin, contacted plaintiffs. As a result, plaintiffs performed various services for the Eisensteins in connection with Internal Revenue examinations of the 1963, 1964 and 1965 Federal income tax returns of the Eisensteins. As a result of some of the services performed by plaintiffs, a net refund of $43,883.59 was due and payable from the United States government to defendants, Aaron and Melba Eisenstein.

At the time of the hearing, plaintiffs maintained that the Eisensteins owed plaintiffs a balance of $16,775 for their services and $300 for a personal loan made by Robert Grossman to Aaron Eisenstein on March 1, 1972. Plaintiffs had been promised by defendant, Aaron Eisenstein, after repeated attempts to collect the balance due had failed, that payment on the moneys owed would come from the Internal Revenue refund check once it was received.

On May 24, 1972, in accordance with a power of attorney executed by the parties, plaintiffs received from the Internal Revenue Service a United States Treasury check, payable to the Eisensteins in the amount of $57,962.75. The check included the amount of the refund as well as interest on the refund owed by the government.

Since attempts at collection of fees from defendants had previously been so disastrous, plaintiffs were reluctant to give up possession of the check without first being paid their fee. In order to effectuate payment, a meeting was held on May 24, 1972, at the Rittenhouse Square offices of defendant, The First Pennsylvania Banking and Trust Company. Present at the meeting were plaintiff, Warren Eisenberg, defendant, Aaron Eisenstein, and Sidney Parelman, manager of the Rittenhouse Square office of defendant bank. As a result of the meeting, an agreement was reached where the United States Treasury check was to be placed in defendant wife's account for collection and distribution. Simultaneously, defendant wife was to draw a check payable to plaintiffs in the sum of $17,075 to be paid by defendant bank to plaintiffs immediately upon the clearance of the United States Treasury check. At the suggestion of Parelman, plaintiff Eisenberg agreed to open a new account with defendant bank for the exclusive purpose of collecting and receiving the proceeds of the check to be given to plaintiff in the

amount of $17,075. Aaron Eisenstein agreed that payment of his wife's check would not be ordered stopped.

At the meeting, defendant, Aaron Eisenstein, produced a letter executed by his wife stating that the bank was authorized to make payment according to an attached list. At the meeting, Aaron Eisenstein executed a note authorizing the payment of the $17,075, which plaintiff Eisenberg was led to believe was the list defendant wife's letter referred to.

Relying on the representations and agreements of defendants, Aaron and Melba Eisenstein, and the bank, through its authorized agent, plaintiff Eisenberg released possession of the United States Treasury check at the close of business on May 24, 1972, for deposit in defendant bank on May 25th. Throughout the meeting and upon releasing the check, plaintiff Eisenberg repeatedly stated that he was releasing possession of the government check in reliance of Melba Eisenstein's letter authorizing payment and that the new account was opened solely for the purpose of receiving and expediting collection of the funds due and promised from the treasury check.

On May 26, 1972, defendant bank notified plaintiff that on May 25, 1972, Melba Eisenstein had ordered the payment of her check stopped.

At the hearing for the preliminary injunction, defendant Eisenstein maintained that equity had no jurisdiction since an action in assumpsit for the funds owed would be an adequate remedy and that plaintiff had no right to any of the proceeds of the Internal Revenue check.

If this action were brought by attorneys rather than accountants, a charging lien could be established on the proceeds of the United States Treasury check. Recht v. Clairton Urban Redevelopment Authority, 402 Pa. 599 (1960), outlines the requirements of a charging lien, at page 608:

"A review of these authorities illustrates that before a charging lien will be recognized and applied, it must appear (1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien."

Plaintiffs meet these requirements except for the fact that accountants' services were performed. Although defendants might argue that in the instant situation no particular fund was initially envisioned by plaintiffs when they began performing services for the Eisensteins and that payment was to be personal, coming from the client rather than the fund, nevertheless on various subsequent occasions the parties manifested their intention that final payment would be made from the proceeds of the refund.

Since such an agreement was reached, plaintiffs established their rights to an equitable lien on the proceeds of the treasury check. Equitable liens similar to an attorney's charging lien have been created in situations where parties have agreed to make particular property or funds security for debts on other obligations: Wells v. Wells, 166 Pa. Superior Ct. 635 (1950); Hurley v. Ashbridge, 55 Pa. Superior Ct. 523 (1914). In Hurley, the court stated at page 527:

"It is agreed too that no particular form of words is required to create a pledge of a future fund or a lien thereon such as equity will recognize and enforce. It is sufficient if it plainly appears that the parties intended to pledge the fund and appropriate it to a par-

ticular purpose and have entered into some instrument calculated to evidence and execute that intention."

Sufficient testimony was produced at the hearing for the court to determine that an agreement existed as to the collection of the fee due out of the proceeds of the United States Treasury check. It might be argued by defendants that the requirement of a writing is not met in the case at hand. However, at least for the purposes of a preliminary injunction, the writings produced and executed at the meeting at defendant bank fulfill the requirement. Furthermore, at this stage neither defendant can claim the lack of a writing or clear manifestation to create a lien, since sufficient testimony was introduced to show the probability of a fraud committed on plaintiff Eisenberg. Eisenberg was led to believe that Exhibits P-1 and P-3, the papers produced and executed at the bank, constituted an assignment of a portion of the funds of the treasury check to him.

Even if there were no lien, equity has jurisdiction to issue a preliminary injunction restraining the use of funds where it appears that without an injunction, funds will be depleted before the parties can conclusively establish their rights: Pennsylvania Turnpike Commission v. Evans, 13 D. & C. 2d 290 (1957), affirmed on appeal at 392 Pa. 110 (1958).

It was made apparent to the court that if an injunction were not granted, any payment to plaintiffs for their services would be unlikely. Plaintiffs had been told on numerous occasions that funds were not available and that payment could only be made from the refund check. Thus, if the use of part of the proceeds of the check was not enjoined, plaintiffs would be left with no possibility of recovery even if they prevail on a final adjudication on the merits of the case, and an

action in assumpsit would not provide an adequate remedy.

The use of $20,000 was enjoined to cover the lien, along with interest and other costs which might appropriately be granted to plaintiffs after a final hearing.